**HOWARD, BRENNER & NASS, P.C.**
**By:     Edward M. Nass**
**Identification No. 34588**
**By:     Michael A. Rowe**
**Identification No. 82886**
**1515 Market Street, Suite 2000**
**Philadelphia, PA  19102**
**(215) 546-8200**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GERALD MORRIS and BARBARA MORRIS, h/w | CIVIL ACTION |
| vs. | NO. 13-cv-06591 |
| HONEYWELL INTERNATIONAL, INC., et al. | ASBESTOS CASE |

**PLAINTIFFS' MEMORANDUM  IN SUPPORT OF NO LONGER SEVERING
PUNITIVE DAMAGES CLAIMS**

**I.      SECTION 1407 SUPPORTS NO LONGER SEVERING PUNITIVE DAMAGES
CLAIMS**

This is an asbestos-related lung cancer claim originally filed in the Court of Common

Pleas of Philadelphia County, and then removed to this Court in November, 2013 by General

Electric based upon the government contractor defense.   All of the defendants who could

arguably assert the government contractor defense have been dismissed from the case.   The

viable defendants that are now left in the case are as follows: John Crane, Inc., Greene Tweed &

Company Inc., A.W. Chesterton, Honeywell International, Inc., and Pep Boys.   Mr. Morris'

asbestos exposure to the remaining defendants occurred while serving in the U.S. Navy and

while doing automotive brake work while working as mechanic at Rossi's Esso Station and while doing brake work on his own personal vehicles.

The controlling statute on this issue is 28 U.S.C. Sec. 1407(a).   Section 1407(a) provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. . . .Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however, that the panel may separate any claim, cross-claim, counter-claim, or third party claim and remand any such claims before the remainder of the action is remanded.

28 U.S.C. Sec. 1407 (a).

The practice of severing punitive damages claims and retaining these with the instant transferee court has always contemplated that the issue of punitive damages must be resolved at a future date with regard to the MDL 875 action.  Those claims must eventually be resolved. The mandate embodied in Section 1407 counsels that remand is obligatory, implicitly indicating that there is a strong presumption against retention of individual claims when pretrial proceedings have otherwise been completed.  Retention of plaintiffs' punitive damages claims, while the remainder of their cases are transferred for resolution has been a discretionary practice.  However, neither the statute, nor the practice has contemplated that plaintiffs would wholly lose their ability to prosecute their punitive damages claims.  Nor does the statute authorize a discretionary MDL practice of indefinitely suspending the plaintiff's right to pursue any claim to which he may otherwise be entitled.

Rather, Section 1407(a) reads that, while actions "may be transferred" to the MDL district court, they "shall be remanded by the panel at or before the conclusion of such pretrial

proceedings . . . ." Authority for severance of any particular claim, including that seeking punitive damages, falls under the next portion of this subsection, providing that "the panel may separate any claim, cross-claim, counter-claim, or third party claim and remand any such claims *before the remainder of the action is remanded."* (emphasis added). The italicized language contemplates that "the remainder of the action" will, and indeed must, be transferred back for trial at some point. And by the most reasonable construction, that point is "at or before the conclusion of such pretrial proceedings. . . ." In other words, part of the action might be transferred back before the conclusion of pretrial proceedings, but all of it should be transferred back by no later than the conclusion of those proceedings.

As stated by the Third Circuit in In re Roberts, 178 F.3d 181 (3d Cir. 1999), Section 1407(a) "precludes a transferee district judge from assigning a transferred case to itself for trial. The [Supreme Court] determined that Sec. 1407(a) imposes a mandatory obligation on the Panel to remand transferred cases to the transferor court." 178 F.3d 181, 184. Although severing and holding punitive damages claims in abeyance is not the same as assigning them to oneself for trial, the transferee court is constrained by the import of the prohibition, which strongly weighs against indefinite retention of the claims.

Because the instant case is about to be remanded for further proceedings and trial, because nothing will remain of them in the transferee court except for the single punitive damages claim effectively held in abeyance, and because the transferee court has been holding these claims in abeyance on the basis of a policy goal seeking to give "priority to compensatory claims over exemplary punitive damage" claims; In re Collins, 233 F.3d 809, 812 (3d Cir. 2000); and not for the purposes of ongoing settlement negotiations and conferences or any other

"coordinated" pretrial proceedings, the rationale for retaining these claims in these cases simply no longer exists.

## II.   NO LONGER SEVERING PUNITIVE DAMAGES CLAIMS IS NOW APPROPRIATE

Circumstances have sufficiently shifted such that it may now be concluded that the obligation imposed on the transferee court by Section 1407 should be complied with, and that policy considerations now weigh in favor of not severing plaintiffs' punitive damages claims. Cognizant of the long-recognized utility of a victim's right to assert a claim for punitive damages in tort actions generally, the courts severing punitive damages claims framed their actions in terms of deferral.  In other words, these lawful claims remained, and it was always contemplated that, at some point, the plaintiffs would assume their right to pursue them.  The circumstances within the asbestos MDL were not, and by virtue of Section 1407, could not have been different.

The landscape in the asbestos litigation has dramatically changed since the early and mid-1990's, however, and the considerations and policies underlying the deferral of plaintiffs' legitimate punitive damages counts now rest on a far less compelling footing.  To the extent that, even as acknowledged by the Third Circuit in Collins in 2000, asbestos plaintiffs in various states and jurisdictions are permitted to assert their claims for punitive damages, the continued retention of punitive damages claims singles out and thereby is unfair to these plaintiffs.

Embedded in our constitutional and other jurisprudential doctrines is the bedrock commitment to treating like cases, and like litigants, alike.  The reinstatement of other plaintiffs' rights to seek punitive damages in other forums is strongly persuasive authority for doing so in the instant litigation.  See generally Bankhead v. ArvinMeritor, Inc., 205 Cal. App. 4th 68, 88 (Apr. 19, 2012) ("limiting the award in this case would undermine the purpose of

4

punitive damages by giving undue credit to ArvinMeritor's belated efforts to warn users of its products about the hazardous of asbestos, which the jury implicitly found were ineffective and inadequate.   Allowing the award to stand, on the other hand, will serve the purposes of punishment and deterrence by encouraging ArvinMeritor and other manufacturers, in the future, to take every available step to eliminate life-threatening hazards from their products and manufacturing processes altogether, rather than relying on workers and consumers to protect themselves from dangers they may not be in a position to fully understand or entirely avoid.") Anderson v. A.J Friedman Supply Co., Inc., 416 N.J. Super. 46, 63 (2010) ("The jury found that: plaintiffs had proven that Bonnie has 'asbestos related Peritoneal Mesothelioma;' Exxon breached a duty owed to Plaintiffs; Exxon's breach was a proximate cause of Bonnie's disease; Bonnie was awarded $500,000 in compensatory damages.   The jury did not award John damages for past and future loss of consortium.   *There was an immediate trial on punitive damages before the same jury.*   The jury awarded no punitive damages.") (emphasis added); Baccus v. Atl. Richfield Co., 2010 Phila. Ct. Com. Pl. LEXIS 8, 34 (Jan. 13, 2010) (Navy exposure mesothelioma case in which, Phase III, the jury awarded punitive damages, holding that "[t]he jury could reasonably infer that the Defendants acted with wanton and reckless disregard for the lives of others in their sales and manufacturing of their asbestos products.").

As a further matter, the question of the settlement of cases has long been a central concern both with regard to MDL 875 generally, and with respect to the issue of the appropriateness of remand under Section 1407.   In this vein, it is well to note that the impact of plaintiffs' entitlement to seek punitive damages on the universally encouraged settlement process has been controversial in the literature.   But the effect of depriving plaintiffs of being able to seek these claims has been apparent.   The deferral of punitive damages may be seen as

incentivizing certain defendants to resist engaging in reasonable settlement efforts, which in turn tends to lead to a waste of judicial and litigant resources and delay in the resolution of victim's claims.  Some take advantage of the moratorium on punitive damages because they have insurance coverage that covers their compensatory (but typically not punitive) obligations, and force trials that would otherwise be settled because exposure and liability are not in serious dispute.

The availability of punitive damages has been recognized as helpful in promoting settlement.  See generally In re Exxon Valdez, 296 F.Supp. 2d 1071, 1102 (D. Ak. 2004) ("as a general proposition the specter of a large punitive damages award is a very powerful factor in encouraging settlements of entire cases."); In re TMI Litig. Cases Consol. II, 1993 U.S. Dist. Lexis 21049, at *35-36 (M.D.Pa., June 15, 1993) ("The heart of Plaintiffs' plan is its proposal to hold an initial mini-trial of the claims of twelve 'typical' plaintiffs, half of whom are to be chosen by the plaintiffs and half by the defendants.  Under the plan, discovery would proceed immediately as to all issues, including punitive damages.  The twelve illustrative Plaintiffs would then proceed to trial on all their claims, including those for punitive damages.  Plaintiffs claim that this initial trial would provide a basis for the parties realistically to evaluate their respective cases and promote settlement of this action. . . . The court believe that Plaintiffs' proposed plan is tenable and will adopt it."); Quicken Loans, Inc. v. Brown, 737 S.E.2d 640, 663 (W. Va. 2012) (in reviewing a punitive damages award, court should consider "[t]he appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed.").

In addition to providing retribution for a defendant's outrageous misconduct – if and only if proven at trial – punitive damages are embedded in American tort law with the aim of

deterring similar misconduct by others, not only with regard to the same products or in the same circumstances, but with regard to analogous circumstances providing similar opportunities and incentives to profit from a calculated disregard of the health and well-being of others.  The United States Supreme Court has stated the following on the issue:

> Punitive damages have long been a part of traditional state tort law. . . Blackstone appears to have noted their use. 3 W. Blackstone, Commentaries *137-*138; *see also Wilkes v. Wood, Lofft* 1, 98 Eng. Rep. 489 (C.P. 1763) (the Lord Chief Justice validating exemplary damages as compensation, punishment, and deterrence).  Among the first reported cases are *Genay v. Norris*, 1 Bay 6 (S.C. 1784), and *Coryell v. Colbaugh*, 1 N.J.L. 77 (1791).

Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 15 (1991).

Accordingly, a claim that misconduct in the asbestos context occurred several decades in the past, and on the part of corporate individuals no longer at the helm, has not been deemed to override the principle that it is future actors in the general society – and not necessarily the ones in the courtroom – whose similar potential misconduct should be deterred.  By its egregious behavior, the particular defendant is rightly compelled to subsidize the deterrence of other actor's violations or misconduct.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 268 (1981) ("major objective of punitive damages awards is to prevent future misconduct"); Hoffman v. Paper Converting Machine Co., 694 F. Supp. 2d 359, 374 (E.D.Pa. 2010) ("because punitive damages are intended to punish the tortfeasor for outrageous misconduct and to deter him and others like him from similar conduct in the future, the state of mind of the actor is vital") (omitting citation); Home Ins. Co. v. American Home Products Corp., 75 N.Y.2d 196, 203 (1996) (punitive damages serve to deter not only the defendant, but "others" from engaging in similar misconduct); Schwenk v. Kavanaugh, 1998 U.S. Dist. Lexis 22237, at *9 (N.D.N.Y. 1998) ("Punitive damages serve two important public interests: deterring future misconduct by the defendants and others like them, and punishing the defendants for misconduct").

As a related matter, asbestos-related injuries are, by their nature, latent injuries that typically manifest many years following the harmful exposures. In such cases, the devastating impact of a defendant's reckless misconduct will not and cannot be known until well after the decision has been made not to warn product users of the hazards. That a company's failure to warn about its products hazards – when coupled with other indicia of a reckless disregard of human health and safety – will cause harm only several years later cannot be deemed a factor immunizing it from punitive damages. An indefinitely protracted retention and deferral of these claims does effectively immunize even the most egregious actors or misconduct from a hearing on these issues. See generally In re Pfohl Bros. Landfill Litg., 68 F. Supp. 2d 236, 262 (W.D.N.Y. 1999) (in cases arising from injuries or deaths from various cancers caused by exposure to hazardous and toxic substances from defendant's landfill, permitting punitive damages claims to proceed because "[p]unitive damages may be awarded in tort actions . . . where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might be so prompted, from indulging in similar conduct in the future") (omitting citations).

## III.    CONCLUSION

Plaintiffs respectfully submit that the time is now right for fulfillment of Section 1407's mandatory requirement that all claims be remanded to the transferor court by no later than the completion of pre-trial proceedings. The policy considerations previously cited in support of severance of the punitive damages claims may not override Section 1407's prescriptions; nor are those considerations as compelling presently as they may have been during earlier states of the MDL transfer mechanism. Additionally, transferor courts are aware of, and capable of

administering punitive damages jurisprudence.

Respectfully submitted,

HOWARD, BRENNER & NASS, P.C.

By: _____

EDWARD M. NASS
MICHAEL A. ROWE
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Michael A. Rowe, do hereby certify that a hard copy of Plaintiffs' Memorandum on Rule to Show Cause Why Punitive Damages Should Not Be Severed and Should Be Tried With This Case was properly signed and that a true and correct copy was filed with the Court and served upon all counsel of record via E-File Service pursuant to the Federal Rules of Civil Procedure on November 19, 2014.

HOWARD, BRENNER & NASS, P.C.

By:_____
      MICHAEL A. ROWE