IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | Consolidated Under MDL Docket No. 875 |

| | | |
|---|---|---|
| GERALD MORRIS and BARBARA MORRIS, h/w | : : | CIVIL ACTION NO. 2:13-cv-06591-ER |
| Plaintiffs, | : | |
| v. | : : | |
| HONEYWELL INTERNATIONAL, INC., *et al.*, | : : | ASBESTOS CASE |
| Defendants | : | |

**DEFENDANT, HONEYWELL INTERNATIONAL, INC.'S
RESPONSE TO PLAINTIFFS' MEMORANDUM IN SUPPORT
OF NO LONGER SEVERING PUNITIVE DAMAGES CLAIMS**

Defendant, Honeywell International, Inc. ("Honeywell"), the successor in interest to Allied Signal, Inc., the successor in interest to the Bendix Corporation, by and through its counsel, hereby submits its Response to Plaintiffs' Memorandum in Support of No Longer Severing Punitive Damages Claims.

Defendant Honeywell incorporates by reference, joins, and adopts the Responses of Co-Defendants to Plaintiffs' Memorandum in Support of No Longer Severing Punitive Damages Claims as if set forth at length herein.

In further support of this Response, Honeywell maintains that the policy reasons for severance of punitive damages claims are very much still viable. The sheer volume of asbestos

7877330-1

cases has driven a multitude of companies into bankruptcy over the years. The decision of this Court, as well as the Philadelphia County Court of Common Pleas (where the instant case originated), to not allow claims for punitive damages in asbestos cases has been an attempt to preserve the assets of remaining defendants, once treated as peripheral given their lack of involvement in the manufacturing of asbestos insulation and related products, in order to ensure that plaintiffs can continue to be compensated for their asbestos related injuries. These types of defendants are not the proper target for damages intended primarily as punishment.

It is significant to note that the Philadelphia County Court of Common Pleas recently revisited this issue and once again determined that punitive damages are not an appropriate remedy in the asbestos program. *See* Philadelphia County Court of Common Pleas General Court Regulation No. 2012-01 and General Court Regulation No. 2013-01, copies of which are attached hereto collectively as Exhibit "A." In 2012, the Court, after much review and analysis, ordered that the deferral of punitive damages claims should continue. *See* Exhibit "A," Philadelphia County Court of Common Pleas General Court Regulation No. 2012-01. Just last year, the Court, upon further consideration, again decreed that punitive damages claims in asbestos cases shall be deferred. *See* Exhibit "A," Philadelphia County Court of Common Pleas General Court Regulation No. 2013-01. It is clear that the rationale for deferral of punitive damages claims still exists and accordingly, the severance and retention of such claims by the MDL 875 Court is still warranted.

7877330-1

For the reasons set forth herein and in the Responses of Co-Defendants, Honeywell respectfully submits that this Honorable Court should continue its practice of severing claims for punitive damages and retaining these claims in the MDL 875 Court.

Respectfully submitted,

**RAWLE & HENDERSON** LLP

BY: /s/ Peter J. Neeson
Peter J. Neeson, Esquire
Benjamin Rose, Esquire
PA Attorney Identification Nos. 27601/42203
The Widener Building
One South Penn Square
215-575-4200
*Attorneys for Defendant,*
*Honeywell International, Inc.*

Dated: November 26, 2014

7877330-1

2238091-1

# EXHIBIT A

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

TRIAL DIVISION

General Court Regulation No. 2012-01

*In re: Mass Tort and Asbestos Programs*

Background: In an effort to consider and address a number of concerns and criticisms of this Court's Mass Tort Program and the Asbestos Program in particular, the Coordinating Judge of the Complex Litigation Center and the Administrative Judge of the Trial Division reviewed the Mass Tort protocols and subsequently issued a Notice to the Bar on November 28, 2011. This Notice confirmed the Court's decision to end reverse bifurcation in all pharmaceutical cases, established a two month comment period whereby counsel were invited to submit comments concerning the utilization of consolidation and reverse bifurcation trial methodologies and further requested comment on addressing claims of punitive damages.

During the two month comment period spanning December and the month of January, 2012, this Court independently examined its docket of asbestos claims and reviewed certain relevant and pertinent information upon which it now bases the implementation of substantial changes and revisions to the conduct of its Mass Tort Program and in particular the trial of asbestos cases (asbestos cases constitute a large portion of the inventory of the Mass Tort Program).

The asbestos case inventory as of February 3, 2012 numbers 770 cases. Since 2006 when the asbestos inventory numbered 589 cases, there has been a pronounced upward trend in filings in each successive year. Although the disposition rate remained at an average of 244 cases per year over this six year period, the Court's disposition rate has not kept pace with filings and a significant backlog has developed and will continue to develop if measures are not implemented to ameliorate the trend.

In January and again in March, 2009, certain Court leadership invited the filing of asbestos cases from other jurisdictions and did so apparently unaware that, at that time, this Court's asbestos program was only meeting the ABA's suggested standards for resolving these cases in 24-25 months in 42% of the cases filed. During a five year period from 2007 through 2011, 82.2% of the cases were disposed of within 31-36 months, leaving almost an entire fifth of the inventory undisposed after three years.

Administrators provided online "Age of Pending Cases" and "Disposed Age Analysis" reports, however, until now no corrective action was taken internally to address the growing backlog of asbestos cases.

From 2001 to 2008, an average of approximately one-third of the filings were from outside the Commonwealth. A dramatic increase in these filings occurred after this Court's

1

leadership invited claims from other jurisdictions. In 2009, when published comments were offered encouraging the filing of claims in Philadelphia, out-of-state filings soared to 41% and in 2011 reached an astonishing 47%.

Preliminary Conclusion: With regard to other Mass Tort Programs, the Court failed to meet ABA suggested standards for the disposition of cases in the HRT, Paxil, Beryllium, Phen-Fen and Vioxx matters, but achieved 100% compliance with the Avandia, Trasylol, Digitek, Firefighters' Hearing Loss, Gadolinium and Anti-Convulsant Drugs programs. The Asbestos Program was by far the one Mass Tort Program most out of compliance with the standards. Significant results were achieved in HRT, Paxil and pharmaceutical mass torts.

With regard to asbestos cases, this Court has invited out-of-state filings, has failed to meet the ABA's suggested standards in over half the filings and may not at the present time meet the needs of the citizens of the Commonwealth for the prompt and fair resolution of these claims, while at the same time addressing the claims of non-Pennsylvania residents. Therefore, in the interests of the orderly administration of justice, this Court is required to thoughtfully review the present methodologies employed in the trial of mass tort cases and, in particular, the asbestos inventory.

During the comment period, 32 comments were submitted by a broad cross-section of the Asbestos Bar and the Court expresses its sincere and grateful appreciation for all recommendations received. These comments were instrumental in formulating revisions of this Court's Mass Tort Program and have facilitated this Court's examination of various methodologies allowing for the disposition of a vast number of cases against the ultimate imperative of providing a fair and prompt resolution of each and every claim. Furthermore, the Court cautions out-of-state plaintiffs to seek other venues to file their claims until and unless this Court's revisions have successfully resolved the backlog of outstanding claims and achieved compliance with the ABA suggested standards.

## ORDER

AND NOW, this 15th day of February, 2012, it is hereby ORDERED, ADJUDGED AND DECREED, for all of the reasons expressed herein above and considering the thoughtful recommendations of many members of the Bar engaged in the trial of mass tort cases in Philadelphia and elsewhere, that the following protocols are hereby adopted for the prompt, efficient and orderly administration of justice in the disposition of all mass tort and asbestos claims with the understanding that the Court will monitor the implementation of these revisions over the coming year and make revisions as necessary:

1. There shall be no reverse bifurcation of any mass tort case, including asbestos, unless agreed upon by all counsel involved.
2. Consolidation of mass tort cases shall not occur absent an agreement of all parties, except in the asbestos program in accordance with the protocols set forth herein below.

3. All punitive damage claims in mass tort claims shall be deferred.

4. Pro hoc vice counsel shall be limited to no more than two (2) trials per year, but otherwise will not be limited on pre-trial appearances. The Court encourages non-Pennsylvania counsel to pass its Bar Examination and thereby become familiar with Pennsylvania law, rules and procedures.

5. Unless otherwise agreed by defense counsel or upon showing of exigent circumstances, all discovery shall take place in Philadelphia.

6. Except for those cases already scheduled for trial through February 29, 2012, asbestos cases thereafter shall be grouped in groups of a minimum of 8 and a maximum of 10 and counsel shall be required to propose cases for consolidation considering the following criteria:

    a. Same law. Cases that involve application of the law of different states will not be tried together;

    b. Same disease. The disease category for each case in a group must be identical. The disease categories of cases to be grouped for trial are mesotheliomas, lung cancers, other cancers and non-malignancy cases;

    c. Same plaintiff's law firm. Primary trial counsel for all cases in each group will be from a single plaintiff firm. Cases where Philadelphia plaintiff firms serve as local counsel for out-of-state counsel will not be grouped with cases from the local firm;

    d. Fair Share Act cases will not be consolidated with non-Fair Share Act cases;

    e. Pleural mesothelioma is a disease that is distinct from mesotheliomas originating in other parts of the body, and will not be tried on a consolidated basis with non-pleural mesothelioma cases and not necessarily tried on a consolidated basis. Non-pleural mesothelioma cases will be further classified for trial, so that non-pleural mesothelioma cases allegedly caused by occupational exposure will not be tried on a consolidated basis with non-pleural mesothelioma cases allegedly caused by para-occupational (bystander) exposure;

    f. And such other factors as determined appropriate in weighing whether all parties to the litigation can receive a prompt and just trial. The Court's present backlog of asbestos cases shall not be an overriding factor in the consolidation determination.

7. Any grouping of cases less than 8-10 in number shall not receive a trial date until a group is formed of 8-10 cases. A maximum of 3 of these 8-10 cases may be tried, with the other 5-7 cases either resolving through settlement or returned to the Coordinating Judge for regrouping and relisting for trial.

8. Mediation: Once grouped, assigned a trial date and after Motions for Summary Judgment have been decided by the Court, counsel are urged to seek mediation from a special panel of former judges named herein below. Either side may request mediation. The mediator selected by the parties shall advise the Court whether the plaintiff firm's participation was in good faith or not. In the discretion of the Coordinating Judge, any plaintiff firm's failure to proceed in good faith in mediation may constitute just cause to remove that group of cases from the trial list and any defendant's failure to proceed in good faith may result in an increase of the maximum 3 cases consolidated for trial. Since no more than 3 cases may be consolidated and proceed to trial in any group of 8-10, the remaining 5-7 cases should be resolved and settled. Otherwise, those unresolved cases shall be relisted for trial. All parties will share the expense of mediation.

9. The panel of former judges invited to participate in the special mediation of mass tort cases are the following:

   1. Jane Cutler Greenspan, Judge
      JAMS Arbitration, Mediation and ADR Services
      1717 Arch Street
      Suite 4010 - Bell Atlantic Tower
      Philadelphia, PA  19103
      (215) 246-9494

   2. G. Craig Lord, Judge
      Blank Rome LLP
      One Logan Square
      130 North 18th Street
      Philadelphia, PA  19103-6998
      (215) 569-5496

   3. James R. Melinson, Judge
      JAMS Arbitration, Mediation and ADR Services
      1717 Arch Street
      Suite 4010 - Bell Atlantic Tower
      Philadelphia, PA  19103
      (215) 246-9494

   4. Russell Nigro, Judge
      210 W. Washington Square
      Philadelphia, PA  19106
      (215) 287-5866

> 5. Diane M. Welsh, Judge
>    JAMS Arbitration, Mediation and ADR Services
>    1717 Arch Street
>    Suite 4010 - Bell Atlantic Tower
>    Philadelphia, PA  19103
>    (215) 246-9494

10. The plaintiff firm shall designate which of the cases will proceed to trial. The defendants have the right to object to the cases selected to be tried together.

11. Immediately prior to trial of up to 3 consolidated asbestos cases, the assigned trial judge shall independently determine whether the cases will be tried in a consolidated manner based on the criteria herein above set forth and any other factors deemed relevant to the issue of consolidation and a fair trial.

12. Expediting of Cases.  There shall be no expediting of cases based on exigent medical or financial reasons until the backlog of pending cases has been resolved, unless otherwise agreed by a majority of the defendants. When this Program achieves 80% of all asbestos cases resolved in 24-25 months, advanced listings based on exigent medical circumstances will be considered for plaintiffs with Pennsylvania exposure only.

13. Effective May 1, 2012, the Honorable Arnold New, presently assigned to the Commerce Program, will be reassigned as a Co-Coordinating Judge of the Complex Litigation Center and will join the Honorable Sandra Mazer Moss in administrating all programs in the Complex Litigation Center. Judge Moss will assume senior status as of December 31, 2012 at which time Judge New will thereupon serve as the sole Coordinating Judge of the Complex Litigation Center and its Mass Tort Program.

14. Effective May 1, 2012, the Honorable Gary Glazer will be reassigned to the Commerce Program and will assume Judge New's commerce inventory. Judge Glazer's assignment to the Commerce Program shall not interfere or impair in any fashion his continued services to the Supreme Court as Administrative Judge of Traffic Court.

15. Throughout this year, the Court will entertain suggestions to improve these protocols. During the month of November, 2012, the Court will once again invite and consider comments from interested members of the Bar addressing these protocols and the necessity for any changes and/or modifications.

    This General Court Regulation is promulgated in accordance with Pa.R.C.P. No. 239 and the April 11, 1986 Order of the Supreme Court of Pennsylvania, Eastern District, No. 55 Judicial Administration. The original General Court Regulation shall be filed with the Prothonotary in a Docket maintained for General Court Regulations issued by the Administrative Judge of the Trial Division, Court of Common Pleas of Philadelphia County, and shall be submitted to the *Pennsylvania Bulletin* for publication. Copies of the General Court Regulation shall be submitted to the Administrative Office of Pennsylvania Courts, the Civil Procedural Rules Committee, American Lawyer Media, The Legal Intelligencer, Jenkins Memorial Law Library,

and the Law Library for the First Judicial District of Pennsylvania, and shall be posted on the website of the First Judicial District of Pennsylvania: http://courts.phila.gov/regs.

BY THE COURT:

/s/ John W. Herron
HONORABLE JOHN W. HERRON
Administrative Judge, Trial Division

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

TRIAL DIVISION

General Court Regulation No. 2013-01

*Notice to the Mass Tort Bar*
*Amended Protocols and Year-End Report*

This Court adopted transitional working rules ("protocols") on February 15, 2012 (see General Court Regulation No. 2012-01) and amended on June 18, 2012 (see General Court Regulation No. 2012-03) to address concerns that the mass tort inventory was experiencing explosive growth, i.e.:

1. In the last six (6) years, the pending inventory rose from 2,542 cases to 5,302 cases, or a 52% increase.
2. While meeting the ABA standards for time to disposition in 90% of all major jury cases, only 37.5% of the mass tort cases were disposed in accordance with these standards. (These standards are unrealistically short for mass torts.)
3. The 2011 year-end inventory of 6,174 cases burdened FJD resources and required prudent management and court oversight to assure meeting scheduled events and trial dates.

Based on the results from January through December, 2012 terms, the Court reports the following:

1. There were 816 mass tort filings for 2012. This is a 70% reduction from the 2,690 cases filed in 2011 and a return to pre-2009 filing levels.
2. There has been a slight reduction in the total out of state filings. In percentage terms, pharmaceutical cases have been reduced from 88% to 86%, and in asbestos cases from 47% to 44%.
3. There has been heightened settlement activity. Mediation activity in both asbestos and pharmaceutical cases has increased notably.
4. Discovery disputes have greatly diminished as a result of adopting separate discovery rules written by the Asbestos Bar and the Pharmaceutical Bar.
5. Since January 1, 2012, two additional judges have been assigned to the Program in an effort to reduce the swelling inventory.
6. The overall inventory of mass tort cases has been reduced by 14% to 5,302 cases as of December 31, 2012.
7. In 2012, only six (6) mass tort cases were tried to jury verdict with two (2) resulting in plaintiff verdicts and four (4) in defense verdicts. These results can be compared with the Major Jury Program in which 148 cases were tried

to jury verdict with 49% resulting in plaintiff verdicts and 51% in defense verdicts.

Accordingly, the Court now republishes the protocols as modified over the past year.

# ORDER

AND NOW, this 7th day of February, 2013, it is hereby ORDERED, ADJUDGED AND DECREED that:

1. There shall be no reverse bifurcation of any mass tort case, including asbestos, unless agreed upon by all counsel involved.
2. Consolidation of mass tort cases shall not occur absent an agreement of all parties, except in the asbestos program in accordance with the protocols set forth herein below.
3. All punitive damage claims in asbestos claims shall be deferred. Punitive damage claims may be litigated in pharmaceutical mass tort cases provided that the Coordinating Judge, following appropriate motion practice by defense counsel at least 60 days in advance of trial, rules that there are sufficient requisite proofs to support the claim going to trial.
4. Pro hac vice counsel shall be limited to no more than four (4) trials per year, but otherwise will not be limited on pre-trial appearances. The Court encourages non-Pennsylvania counsel to pass its Bar Examination and thereby become familiar with Pennsylvania law, rules and procedures.
5. Discovery Rules: The following discovery rules were proposed to the Court by the Asbestos Bar and the Pharmaceutical Bar and have been adopted by the Mass Tort Program.

### Asbestos Bar Discovery Rule

Unless otherwise agreed by opposing counsel or upon showing of exigent circumstances, all discovery shall take place in Philadelphia; however, a party may notice a deposition to take place at a location outside of Philadelphia so long as that party provides video conferencing, or telephone conferencing if video conferencing is impracticable, at no expense to opposing parties.

A notice of deposition shall be served on all parties at least 7 days prior to the scheduled deposition date, unless court approval is obtained for a shorter period of time.

### Pharmaceutical Bar Discovery Rule

All plaintiffs shall be made available for deposition in Philadelphia unless otherwise agreed by all parties or upon motion and for good cause shown.

6. Consolidation of Asbestos Cases: Asbestos cases shall be grouped in groups of a minimum of 8 and a maximum of 10 and counsel shall be required to propose cases for consolidation considering the following criteria:

   a. Same law. Cases that involve application of the law of different states will not be tried together;

   b. Same disease. The disease category for each case in a group must be identical. The disease categories of cases to be grouped for trial are mesotheliomas, lung cancers, other cancers and non-malignancy cases;

   c. Same plaintiff's law firm. Primary trial counsel for all cases in each group will be from a single plaintiff firm. Cases where Philadelphia plaintiff firms serve as local counsel for out-of-state counsel will not be grouped with cases from the local firm;

   d. Fair Share Act cases will not be consolidated with non-Fair Share Act cases;

   e. Pleural mesothelioma is a disease that is distinct from mesotheliomas originating in other parts of the body, and will not be tried on a consolidated basis with non-pleural mesothelioma cases;

   f. Non-pleural mesothelioma cases will be further classified for trial, so that non-pleural mesothelioma cases allegedly caused by occupational exposure will not be tried on a consolidated basis with non-pleural mesothelioma cases allegedly caused by para-occupational (bystander) exposure;

   g. And such other factors as determined appropriate in weighing whether all parties to the litigation can receive a prompt and just trial. The Court's present backlog of asbestos cases shall not be an overriding factor in the consolidation determination.

7. Any grouping of cases less than 8-10 in number shall not receive a trial date until a group is formed of 8-10 cases. A maximum of 3 of these 8-10 cases may be tried, with the other 5-7 cases either resolving through settlement or returned to the Coordinating Judge for regrouping and relisting for trial.

8. Mediation: Once grouped, assigned a trial date and after Motions for Summary Judgment have been decided by the Court, counsel are urged to seek mediation from a special panel of former judges named herein below. Either side may request mediation. The mediator selected by the parties shall advise the Court whether the plaintiff firm's participation was in good faith or not. In the discretion of the Coordinating Judge, any plaintiff firm's failure to proceed in good faith in mediation may constitute just cause to remove that group of cases from the trial list and any defendant's failure to proceed in good faith may result in an increase of the maximum 3 cases consolidated for

trial. Since no more than 3 cases may be consolidated and proceed to trial in any group of 8-10, the remaining 5-7 cases should be resolved and settled. Otherwise, those unresolved cases shall be relisted for trial. All parties will share the expense of mediation.

9. The panel of former judges invited to participate in the special mediation of mass tort cases are the following:

   1. Phyllis W. Beck, Judge
      Independence Foundation
      Offices at the Bellevue
      200 South Broad Street, Suite 1101
      Philadelphia, PA  19102

   2. Jane Cutler Greenspan, Justice
      JAMS Arbitration, Mediation and ADR Services
      1717 Arch Street
      Suite 4010 - Bell Atlantic Tower
      Philadelphia, PA  19103
      (215) 246-9494

   3. G. Craig Lord, Judge
      Blank Rome LLP
      One Logan Square
      130 North 18th Street
      Philadelphia, PA  19103-6998
      (215) 569-5496

   4. James R. Melinson, Judge
      JAMS Arbitration, Mediation and ADR Services
      1717 Arch Street
      Suite 4010 - Bell Atlantic Tower
      Philadelphia, PA  19103
      (215) 246-9494

   5. Russell Nigro, Justice
      210 W. Washington Square
      Philadelphia, PA  19106
      (215) 287-5866

   6. Diane M. Welsh, Judge
      JAMS Arbitration, Mediation and ADR Services
      1717 Arch Street
      Suite 4010 - Bell Atlantic Tower
      Philadelphia, PA  19103
      (215) 246-9494

10. The Court shall designate which of the cases will proceed to trial. The parties may object to the cases selected to be tried together and request the Court to reconsider.

11. Immediately prior to trial of up to 3 consolidated asbestos cases, the assigned trial judge shall independently determine whether the cases will be tried in a consolidated manner based on the criteria herein above set forth and any other factors deemed relevant to the issue of consolidation and a fair trial.

12. The Coordinating Judge will accept and rule upon Petitions for advanced listings premised upon a medically verifiable prognosis of imminent death.

This General Court Regulation is promulgated in accordance with Pa.R.C.P. No. 239 and the April 11, 1986 Order of the Supreme Court of Pennsylvania, Eastern District, No. 55 Judicial Administration. The original General Court Regulation shall be filed with the Prothonotary in a Docket maintained for General Court Regulations issued by the Administrative Judge of the Trial Division, Court of Common Pleas of Philadelphia County, and shall be submitted to the *Pennsylvania Bulletin* for publication. Copies of the General Court Regulation shall be submitted to the Administrative Office of Pennsylvania Courts, the Civil Procedural Rules Committee, American Lawyer Media, The Legal Intelligencer, Jenkins Memorial Law Library, and the Law Library for the First Judicial District of Pennsylvania, and shall be posted on the website of the First Judicial District of Pennsylvania: http://courts.phila.gov/regs.

BY THE COURT:

*/s/ John W. Herron*

HONORABLE JOHN W. HERRON
Administrative Judge, Trial Division

## CERTIFICATE OF SERVICE

PETER J. NEESON, ESQUIRE, certifies that he served a true and correct copy of the attached Response to Plaintiffs' Memorandum in Support of No Longer Severing Punitive Damages Claims upon all counsel of record electronically via Electronic Court Filing on the date listed below.

                                    **RAWLE & HENDERSON** LLP

BY:   /s/ Peter J. Neeson
          Peter J. Neeson, Esquire
          Benjamin Rose, Esquire
          PA Attorney Identification Nos. 27601/42203
          The Widener Building
          One South Penn Square
          215-575-4200
          *Attorneys for Defendant,*
          *Honeywell International, Inc.*

Dated: November 26, 2014

7877330-1