## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GERALD MORRIS and BARBARA MORRIS, h/w: | CIVIL ACTION |
|  | NO. 2:13-cv-06591-ER |
| vs. |  |
| PEP BOYS, et al. |  |

## DEFENDANT PEP BOYS' OPPOSITION TO PLAINTIFFS' MEMORANDUM IN SUPPORT OF NO LONGER SEVERING PUNITIVE DAMAGES CLAIMS

Pursuant to This Honorable Court's Order dated November 12, 2014, Defendant Pep Boys respectfully submits this Opposition to Plaintiff's Memorandum claiming that it is no longer appropriate to sever punitive damages claims as has been the policy in the MDL 875. The short answer is that Pep Boys opposes the discontinuation of the severance of punitive damages in light of the public policy underpinnings motivating the institution of the severance in the first place combined with the unmistakable fact that circumstances have not changed in a way to diminish the need for the public policy justifying the severance. It is respectfully requested that this Honorable Court deny the relief sought by Plaintiffs and that this Honorable Court leave the severance of punitive damages procedure in place.

## I.  The Public Policy Behind the Severance Remains Viable and Undiminished

As the Third Circuit recognized in In Re: Collins, punitive damages are really nothing more than a "windfall" to the particular plaintiffs in a solitary case along with their attorneys. 233 F.3d 809, 812 (3d Cir. 2000). While the expenditure of these resources comes at the cost of the defendant(s), the cost is also born by "current and future victims of rightful compensation" and raises a question of public policy. Id. Plaintiffs seeking to recover punitive damages are in essence seeking to recover from a limited pool of resources that would or could be used to

compensate future litigants who are similarly injured.  See id.  Interestingly, this pits a plaintiffs' law firm in a contest with its future clients since any large, punitive recovery now, could foreclose a future client's recovery.  Thus, even though plaintiffs law firms reap some benefit from punitive damages recoveries, this benefit creates a tension between the firm and its future clients.  Given this dynamic, punitive damages not only punish the defendant, they also punish future litigants and create a strain between those future litigants and their counsel.  In this context, the only pure beneficiary of a punitive damages claim is the individual plaintiff or plaintiffs in a singular case.  Based on this inescapable reality, the Third Circuit described the severance of punitive damages in order to give priority to compensatory claims as "enlightened." Id.  Moreover, the court in In Re: Collins found it "discouraging" that some courts permit the practice of recovery of punitive damages at the expense of future litigants.  Id.

Importantly, Plaintiffs have offered, through their Memorandum, no relevant change in the above dynamic that would mitigate the concerns addressed through the public policy of protecting future litigants by severing punitive damages.  In fact, the only relevant change that has occurred since the institution of the severance is further depletion of available resources for the litigants as additional companies have declared bankruptcy due to asbestos litigation.  See, e.g., In re: Garlock Sealing Technologies LLC, 10-BK-31607 filed in the U.S. Bankruptcy Court for the Western District of North Carolina.  The continual bankruptcies justify both the original institution and continuation of the severance of punitive damages.

While Plaintiffs seek a discontinuance of the severance, they fail to offer any justification for doing so other than the original arguments advanced against the severance in the first place. In other words, Plaintiffs can only recycle the old arguments, which were found to be unpersuasive when severance was originally instituted by the MDL 875 and upheld by the Third

Circuit.  To illustrate, Plaintiffs claim that nothing in the applicable statute (28 U.S.C. §1407(a)) authorizes "a discretionary MDL practice of indefinitely suspending the plaintiff's right to pursue any claim to which he may otherwise be entitled."  Plaintiffs' Memorandum at 2. Plaintiffs further argue that the severance of punitive damages claims is governed by the second half of the statute, which, Plaintiffs argue, requires that any severed claim be remanded prior to the conclusion of the proceedings.  Plaintiffs' Memorandum at 2-3.  Plaintiffs fail to explain how this argument is any different than what the petitioners essentially sought in In Re: Collins, 233 F.3d 809 (3d Cir. 2000).

Plaintiffs also argue that the severance of punitive damages "has always contemplated that the issue of punitive damages must be resolved at a future date with regard to the MDL 875 action."  Plaintiffs' Memorandum at 2.  Regardless of the provisional characteristic of the original severance, Plaintiffs fail to point to any definitive indication or plan for this Court to re-institute the punitive damages claims at any point in the future.  While the severance may have been worded as a temporary procedural rule, *nothing* in the creation of the severance indicated: 1) that the severance would be wholly abandoned at some point; or 2) that the ultimate resolution could *not* be the implementation of a permanent severance.  Plaintiffs' arguments fail to recognize or account for the fact that indefinite or perhaps even permanent severance could very well *be* the resolution.  There is nothing in the relevant record or Plaintiffs' Memorandum to indicate that reinstitution of punitive damages was ever "the plan" following a temporary use of the severance.  Instead, the severance was instituted to address an important public policy that continues to be threatened through ongoing asbestos litigation, generally speaking, and particularly threatened by the availability of punitive damages anywhere, in light of the continual bankruptcies with no end in sight.

3

Ultimately nothing has changed to mitigate the concerns underpinning the rationale behind instituting the severance in the first place. Thus, this Honorable Court should find that the severance is proper and fulfills the public policy for which it was implemented. Further, since the institution of the severance, nothing has occurred that lessens the need for or the appropriateness of the severance. Ultimately, this Honorable Court should hold that the severance will remain in place and MDL 875 cases, including this case, shall be remanded for further proceedings while the punitive damages claims remain severed.

## II. There Is No Need for Punishment of Defendants Traditionally Sued in Asbestos Cases

Defendants, such as most of those subject to the relevant Order, are routinely sued in asbestos cases and in particular by Plaintiffs' counsel. The repetitive nature of asbestos litigation means that the defendants are not defending just one case with only one opportunity "to be taught a lesson" through the punishment of punitive damages. Instead, the defendants have to defend case after case in which litigants recall sometimes amazing details about seemingly rote events that took place decades ago. This dynamic is punishment enough. Moreover, punitive damages in asbestos cases are unjust to the extent that they punish a company for acts that occurred two, three decades or more ago. Thus, the employees, investors, consumers, and business partners of the defendants in today's litigation are punished for acts to which they have no connection and about which they have little or no knowledge. The benefit of a windfall through punitive damages to an individual plaintiff pales in comparison to the damage done to the defendants, future litigants, and even plaintiffs' counsel.

Plaintiffs argument on this issue can essentially be boiled down to "well other courts are doing it," i.e., allowing for the recovery of punitive damages. Not only is this argument

4

unpersuasive, but, as referenced above, the availability of punitive damages in some jurisdictions is "discouraging."  Finally on this issue, Plaintiffs filed their case in the Philadelphia Court of Common Pleas in which the recovery of punitive damages is not available for identical policy reasons.

## III.   <u>Conclusion</u>

Nothing has changed since the institution of the severance of punitive damages by this Court that would warrant abandoning the very real and important public policy of protecting compensatory damages claims asserted by future litigants in asbestos cases.  Plaintiffs request for the reinstitution of punitive damages claims belies a desire for a few litigants to obtain large monetary awards to the detriment of future litigants, their own counsel, and the companies that are often sued in asbestos cases, which has resulted in dozens and dozens of bankruptcies. Because the public policy of protecting future litigants remains strong or even stronger now than when the severance was first instituted, and because the availability of punitive damages would only benefit the few, it is respectfully requested that this Court leave the severance of punitive damages in effect and remand all cases for trial while retaining jurisdiction over the punitive damages claims.

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
2000 Market Street, Suite 2300
Philadelphia, PA  19103

BY:   <u>/s/**Joshua D. Scheets**  JDS7318</u>
DANIEL J. RYAN, JR., ESQUIRE
djryan@mdwcg.com
JOSHUA D. SCHEETS, ESQUIRE
jdscheets@mdwcg.com
(215) 575-2751
*Attorneys for Defendant, Pep Boys*

## <u>CERTIFICATE OF SERVICE</u>

I, Joshua D. Scheets, do hereby certify that a true and correct copy of Defendant Pep

Boys Opposition to Plaintiff's Memorandum in Support of No Longer Severing Punitive

Damages Claims was served upon all parties by electronic service through the Court's ECF/Pacer

system on November 26, 2014.

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**
2000 Market Street
Philadelphia, PA  19103

BY:   /s/**Joshua D. Scheets**  JDS7318
DANIEL J. RYAN, JR., ESQUIRE
djryan@mdwcg.com
JOSHUA D. SCHEETS, ESQUIRE
jdscheets@mdwcg.com
(215) 575-2751
*Attorneys for Defendant, Pep Boys*